**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

| | |
|---|---|
| CINDY JOCELYN, *on behalf of herself and all others similarly situated*, | Case No. |
| Plaintiff, | |
| | **CLASS ACTION COMPLAINT** |
| - against - | |
| CVS Pharmacy, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

-------------------------------------------------------- x

    Plaintiff CINDY JOCELYN, individually and on behalf of all other persons similarly situated in New York and the United States, by her undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, CVS Pharmacy, Inc., alleges the following:

## <u>NATURE OF THE ACTION</u>

    1.    This is a consumer protection action arising out of the deceptive and otherwise improper business practices that Defendant, CVS Pharmacy, Inc. (hereinafter, "CVS" or "Defendant"), engages in with respect to the packaging of its 5.5 oz. bag of Gold Emblem® red fish candy product (hereinafter, the "Product"), which is regularly sold at CVS pharmacies and online.

2.      The Product is mass produced and packaged in non-transparent plastic bags of standardized size, with a standardized quantity of candy in each bag.

3.      Defendant manufactures, markets and sells the Product with non-functional slack-fill (unnecessary empty space) in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et. seq.*, as well as the laws of New York State, the other 49 states, and the District of Columbia which impose requirements identical to federal law. Defendant's bags are consequently made, formed or filled as to be misleading.

4.      Slack-fill is air or filler material within a packaged product. Non-functional slack-fill is slack-fill that serves no legitimate purpose, and misleads consumers about the quantity of food they are purchasing. When consumers purchase a package of Defendant's Product, they are getting less candy than they bargained for. They are effectively tricked into paying for air, because the Product bags contain large amounts of non-functional slack-fill.

5.      The size of the Product's bags in comparison to the volume of the candy contained therein makes it appear to Plaintiff and Class members that they are buying more than what is actually being sold. Plaintiff and Class members are denied the benefit of their bargain because they pay for full bags of the Product but actually receive far less

6.      The Product is packaged in a partially non-transparent plastic bag so that Plaintiff and Class members cannot see the non-functional slack-fill in the container. Below is an image of how the bag appears once opened:

2



7.      Defendant's very own Gold Emblem® assorted fish bags (herein "Assorted Fish") are the exact same size as Plaintiff's Product bags – yet contain far more candy. This demonstrates that it is possible to fit a greater quantity of candy into Defendant's Red Fish Products bags. The surplus empty space in Defendant's Product bags, over and above the space in its' own Assorted Fish bags, is certainly non-functional slack-fill. When Defendant's fits more of a similar candy into the same sized bags that the Product uses, it proves that **<u>at least</u>** some of the empty space in the Product bags is unnecessary and thus misleading.

8.      Each Product bag is functionally identical to every other 5.5 oz. candy bag with regards to dimensions. All 5.5 oz. Product bags are standardized to be far less than half full of candy. Class members' Product bags were sized and filled to the same common standard.

9.      Plaintiff brings this proposed consumer class action on behalf of herself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not for resale.

10.     During the Class Period, Defendant manufactured, marketed and sold the Product throughout the United States and the State of New York. Defendant purposefully sold the Product with non-functional slack-fill as part of a systematic practice.

11.     Defendant violated statutes enacted in New York and throughout the 50 States that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1)  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2)  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3)  Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4)  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5)  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6)  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7)  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8)  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9)  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

12.     Defendant has deceived Plaintiff and other consumers by inducing Plaintiff and Class members to reasonably rely on Defendant's misrepresentations and purchase the Product which they would not have purchased at the given price had they known the truth. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Product that it would not have otherwise earned. Plaintiff brings this action to stop Defendant's deceptive practice.

13.     Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

15.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

16.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because it conducts substantial business in this District. Some of the actions giving rise to the Complaint took place in this District, and Plaintiff's claims arise out of Defendant operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engages in substantial and not isolated activity within New York State.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the

Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

18.     Plaintiff JOCELYN is, and at all relevant times hereto has been, a citizen of the state of New York, and resides in Kings County. On August 23, 2017, Plaintiff JOCELYN purchased a 5.5 oz. bag of Gold Emblem® red fish candy product for personal consumption. Plaintiff JOCELYN purchased the Product at a CVS Pharmacy store location at 115 W 125th Street, in New York County. Plaintiff JOCELYN purchased the Product for $1.62, and was financially injured as a result of Defendant's deceptive conduct as alleged herein because she did not receive the quantity that she paid for and was promised. Plaintiff JOCELYN paid to receive a box of candy that was functionally full, but the box Plaintiff JOCELYN received contained approximately 55% slack-fill, with a lot of it being non-functional slack-fill.

19.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff JOCELYN was injured when she paid full price for the Product but did not receive a full container. She would not have paid this sum had she known that the bag was less than half full. Plaintiff was injured by the shortfall in her Product bag. She was injured in the amount of the proportion of her purchase price that paid for non-functional slack-fill in the Product. Should Plaintiff JOCELYN encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes. Plaintiff JOCELYN would still be willing to purchase the Product, as long as Defendant engages in corrective advertising, i.e. as long as she is not compelled to pay for empty space within the container when buying the Product.

*Defendant*

20.     Defendant CVS Pharmacy, Inc.is a corporation organized under the laws of Rhode Island with its headquarters at One CVS Drive, Woonsocket, RI 02895 and an address for service of process at CT Corporation Systems, 111 Eighth Ave, New York, NY 10011. Defendant manufactures, packages, distributes, advertises, markets, and sells the Product to millions of customers nationwide.

21.     The labeling, packaging, and advertising for the Product, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Product and misled the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Product. Defendant owns, markets and distributes the Product, and creates and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Product.

## FACTUAL ALLEGATIONS

### Identical Federal and State Law Prohibit Misbranded Foods with Non-Functional Slack-Fill

22.     Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading."

23.     The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the

volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

24.     The FDA has defined non-functional slack-fill as any slack-fill in excess of that required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in § 100.100(a) apply to that portion of the slack-fill within a container that is necessary for, or results from, a specific function or practice, e.g., the need to protect a product. Slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill. Thus, the exceptions in § 100.100(a) provide only for that amount of slack-fill that is necessary to accomplish a specific function. FDA advises that these exceptions do not exempt broad categories of food, such as gift products and convenience foods, from the requirements of section 403(d) of the act. For example, § 100.100(a)(2) recognizes that some slack-fill may be necessary to accommodate requirements of the machines used to enclose a product in its container and is therefore functional slack-fill. However, § 100.100(a)(2) does not exempt all levels of slack-fill in all mechanically packaged products from the definition of nonfunctional slack-fill.

58 FR 64123, 64126 (emphasis added).

25.     The possibility that some portion of the slack-fill in Defendant's Product may be justified as functional based on the exemptions in §100.100(a) does not justify slack-fill that is in excess of that required to serve a legitimate purpose—protecting contents, accommodating the machines that enclose the contents, accommodating settling, etc.  Such slack-fill serves no purpose other than to mislead consumers about the quantity of food they are actually purchasing. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1–6).").

26.     The food labeling laws and regulations of New York impose requirements that mirror federal law.

27.     New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> "For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10…."

1 NYCRR § 259.1(a)(2).

28.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349.  *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed

misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

**Defendant's Product Contains Non-Functional Slack-Fill**

29.     The Red Fish Product package is a plastic bag that is approximately 6.5 inches in height with a 1 inch sealed portion at the top, and 5.5 inches of vertical capacity[1]. The candy only fills the bottom 2.5 inches of the bag, with 3 vertical inches of air[2]. The candy occupies 45%[3] of the box; air occupies the other 55% of the bag, leaving 55% slack-fill[4]:

---

[1] 6.5 inches height − 1 inch sealed portion = 5.5 inches of vertical capacity.

[2] 5.5 inches of vertical capacity − 2.5 inches of candy = 3 inches of slack-fill.

[3] $\frac{2.5 \text{ inches of candy}}{5.5 \text{ inches of vertical capacity}}$ = Approximately 45% of the Product bag is filled with candy.

[4] $\frac{3 \text{ inches of slack-fill}}{5.5 \text{ inches of vertical capacity}}$ = Approximately 55% slack-fill is in the Product bag.



30.     While some of Defendant's slack-fill may have functional justifications related to packaging requirements or the effects of settling, Defendant's total slack-fill far exceeds the amount necessary, and some of the slack-fill is therefore nonfunctional. This is proven by the

fact that the slack-fill in Defendant's Product is significantly greater than the slack-fill in the

packaging of its' Assorted Fish candy. Below is a comparison of the slack-fill in the Product

with the slack-fill in Assorted Fish:



31.     The Assorted Fish bag has the exact same dimensions as the Red Fish bag. The

candy inside fills approximately 3.5 inches of the bag, leaving only about 2 inches of empty

space at the top of the box, i.e. merely 36%[5] slack-fill, significantly less than the 55% slack-fill

in the Red Fish Product.

32.     Consumers reasonably expect **at least** 64% of the bag to contain candy, as

Defendant's very own Assorted Fish candy proves is possible, but only 45% of the bag contains

[5] $\dfrac{5.5 \text{ inches of vertical capacity} - 3.5 \text{ inches candy}}{5.5 \text{ inches of vertical capacity}}$ = Approximately 36% slack-fill

candy. Therefore, consumers receive **at most** 70% of the candy they reasonably expect to receive ($\frac{45\% \text{ actual fill}}{64\% \text{ minimum expected fill}} = 70\%$). In other words, **at most** only 70% of consumers' money buys the candy for which they bargained. The remaining 30% is wrongfully taken and retained by the Defendant.

33.    The slack-fill in the Assorted Fish® bag may or may not all be functional, but any slack-fill in excess of 36% in the Product is certainly non-functional, as the comparable candy bag demonstrates. Defendant misleads consumers into purchasing its Product because consumers believe that they are purchasing a bag containing only candy and functional slack-fill, but the Product bags have significant amounts of non-functional slack-fill instead of candy, so consumers who purchased the Product received far less candy than they bargained for.

34.    The fact that Defendant's Product contains slack-fill in excess of what is permitted under § 100.100 is proven by the fact that Defendant's other same sized candy bag contains significantly less slack-fill. As shown above, the same sized bag of Defendant's Assorted Fish candy contain significantly less slack-fill, and is under the same constraints as to factors like the need to protect package contents or accommodate machines and settling.

35.    The comparison is between the same kinds of product in the same kind of packaging that is enclosed in the same way by the same kind of technology, and the same distributor. Defendant manages to package its Assorted Fish candy in a way that leaves consumers with a more accurate sense of how much food they are actually purchasing. Thus, whatever real constraints <u>might</u> justify the slack-fill in the Assorted Fish candy cannot explain the excess slack-fill (shortfall) in the Red Fish Product.

14

**A Reasonable Consumer Would Rely Upon And Be Decieved By Defendant's Misleading Packaging**

36.     Plaintiff and Class members viewed Defendant's misleading and misrepresented Product packaging, and reasonably relied in substantial part on its implicit representations of quantity and volume when purchasing the Product. Plaintiff and Class members were thereby deceived into deciding to purchase the Product. The perceived volume of the candy Plaintiff and Class were receiving was a material factor in their decision to buy the Product.

37.     The Product is misbranded regardless of any disclosures about contents settling and regardless of whether or not weight is labeled accurately. Under Federal regulations, "label statements cannot correct nonfunctional or misleading fill." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64129 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100).

38.     Even if Defendant's net weight disclosures are accurate, it does not eliminate the basic deception. The FDA has confirmed this in unequivocal terms:

> FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that <u>the presence of an accurate net weight statement does not eliminate the misbranding</u> that occurs when a container is made, formed, or filled so as to be misleading.

58 FR 64123, 64128 (emphasis added).

39.     The FDA's findings are grounded in congressional intent:

> Section 403(e) of the act requires packaged food to bear a label containing an accurate statement of the quantity of contents. This requirement is separate and in addition to section 403(d) of the act. <u>To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant.</u> In fact, Congress stated (S. Rept. No. 493, 73d Cong., 2d sess. 9 (1934)) in arriving at section 403(d) of the act that that section is "intended to reach deceptive methods of filling where the package is only partly filled and, <u>despite the declaration of quantity of contents on the label</u>, creates the

impression that it contains more food than it does." Thus, Congress clearly intended that failure to comply with either section would render a food to be misbranded.

58 FR 64123, 64128-64129 (emphasis added).

40.    Congress' intent was based on its' investigation of consumer behavior

Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container. Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label."

58 Fed. Reg. 64123-01, 64131 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100) (emphasis added).

41.    Congress recognizes that the size of a package is in and of itself a kind of sales

pitch, even if not made with words or numbers. Thus, consumers can reasonably rely on

packaging size as a representation of quantity regardless of whatever printed on the label.

42.    The size of the Product packaging makes a representation about the quantity of

its' content, independent of the text on the Product labels and regardless of its' accuracy or

inaccuracy. For Defendant's Product, this representation is misleading.

43.    New York courts agree with the FDA's analysis. *See Izquierdo v. Mondelez Int'l,*

*Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, (S.D.N.Y. Oct. 26, 2016).

Izquierdo held that Defendant "does not cite a single controlling decision of law standing for the

proposition that food packaging is incapable of being materially misleading if it displays the net

weight and lists the number of pieces inside of the package. This Court is unwilling to

manufacture such a precedent here." Id. * 11.

44.     While consumers may have come to expect significant slack-fill in candy products, it does not eliminate Defendant's deception. The FDA has stated that "although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 FR 64123, 64131.

45.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Product contained non-functional slack-fill as set forth herein, and would not have bought the Product at the given prices had they known the truth about them.

46.     Defendant's Product packaging was a material factor in Plaintiff' and Class members' decisions to purchase the Product because reasonable consumers would attach importance to the quantity of food they believe they are purchasing.

47.     Plaintiff and the Class reasonably relied on the size of the Product's packaging to infer how much food they were purchasing and reasonably believed that the bags were filled as closely to capacity as functionally possible.

48.     The Product is misbranded even though the bottom portion of the Product bag is transparent. The Product's non-transparent portion only reaches 1.25 inches while the candy inside reaches 2.5 inches. The window is insufficient to allow Plaintiff and the Class to discover the amount of candy therein. The FDA agrees:

> FDA finds that <u>devices, such as a window at the bottom of a package, that require consumers to manipulate the package, e.g., turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container</u>. FDA finds that such devices do not adequately ensure that consumers will not be misled as to the amount of product in a package. Therefore, such foods remain subject to the requirements in § 100.100(a) that slack-fill in the container be functional slack-fill.

58 FR 64123, 64128 (emphasis added).

The possibility that manipulating a package might yield additional insight into its contents does

not exculpate non-functional slack-fill (just as accurate net weight disclosures do not). The possibility of manipulating the package to discover the truth about it does not mitigate the false statement conveyed by the disproportionately large size of the product packaging.

**Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Conduct**

49.     Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Product than Defendant represented they would be receiving. Since Plaintiff and the Class would not have agreed to this exchange had they known the truth, they were deprived of the benefit of their bargain.

50.     Defendant's 7.5 oz. bag of Gold Emblem Assorted Fish candy demonstrates that the identical product bag contains **at most** 36% functional slack-fill, and therefore should contain **at least** 64% candy. However Plaintiff JOCELYN paid $1.62 for a 5.5 oz. bag of the Product, and her bag was only about 45% full of candy, with slack-fill of about 55%.

51.     Since the Product bag was 45% full when it should have been **at least** 64% full, Plaintiff received **at most** 70% of what she bargained for. Accordingly, **at least** 30% of the purchase price, or about $0.49 was unlawfully taken.

52.      In order for Plaintiff and Class members to be made whole, they must be compensated in an amount of the proportion of the purchase price equal to the percentage of non-functional slack-fill in the Product, which is equivalent to the amount of product Plaintiff and the Class paid for that Defendant did not-deliver. *See Lazaroff v. Paraco Gas Corp.*, 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised…Thus, plaintiff has properly

alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of

GBL § 349."); *Waldman v. New Chapter*, Inc., 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010)

("Plaintiff alleges that, had she understood 'the true amount of the product,' she 'would not have

purchased' it… Thus, Plaintiff has properly alleged injury. Accordingly, Plaintiff's § 349 claim

survives Defendant's motion); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK),

2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in his Complaint,

Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price

he paid' to buy the Products had he 'known the truth.'… Case law makes clear that this is

sufficient at the motion-to-dismiss phase for a § 349 claim to survive.").

## CLASS ACTION ALLEGATIONS

53.     Plaintiff  JOCELYN brings this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail
> purchases of the Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate ("the
> Nationwide Class").

In the alternative, Plaintiff JOCELYN seeks to represent:

> All persons who made retail purchases of the Products in New
> York during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate ("the New York
> Class").

54.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or

have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

19

55.     Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

56.     Plaintiff's claims are typical of the claims Class members as they all are similarly affected by Defendant's wrongful conduct.

57.     Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff has no interests antagonistic to them. Plaintiff has retained experienced and competent counsel.

58.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to individually seek redress for the wrongful conduct alleged herein.

59.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members. These include:

      i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold the Product to Plaintiff and Class members using false, misleading and/or deceptive packaging and labeling;

     ii.   Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

    iii.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Product;

    iv.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of its Product constituted an unfair, unlawful or fraudulent practice;

    v.   Whether the packaging of the Product during the class period contained unlawful non-functional slack-fill;

    vi.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent future misconduct;

    vii.   Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

    viii.   Whether Defendant purposely chose non-transparent Product packaging so that Plaintiff and Class members would not be able to see the amount of slack-fill contained in the Product;

    ix.   The appropriate measure of damages and/or other relief;

    x.   Whether Defendant should be enjoined from continuing its unlawful practices.

60.    The membership of the Classes is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

61.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this

forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

62.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

63.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

64.     The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

65.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common**

**law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the
New York Class)**

66.     Plaintiff  JOCELYN realleges and incorporates herein by reference the allegations

contained in all preceding paragraphs, and further alleges as follows:

67.     Plaintiff  JOCELYN brings this claim individually and on behalf of the other

members of the Class for an injunction for violations of New York's Deceptive Acts or Practices

Law, General Business Law ("NY GBL") § 349.

68.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

69.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable

reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on

General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not

an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941

(N.Y. App. Div. 2012) (internal citations omitted)).

70.     The practices employed by Defendant, whereby Defendant advertised, promoted,

marketed and sold its Product in packaging containing non-functional slack-fill are unfair,

deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State

law broadly prohibits the misbranding of foods in language identical to that found in regulations

promulgated pursuant to the FDCA § 403 (21 U.S.C. 343(d)). Under New York Agm. Law §

201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or

filled as to be misleading."

71.     The foregoing deceptive acts and practices were directed at consumers.

72.     Defendant should be enjoined from packaging its Product with non-functional

slack-fill, as described above, pursuant to NY GBL § 349,.

73.     Absent an injunction, Plaintiff JOCELYN is at risk of continued injury because she can no longer rely on Defendant's packaging, even if the nonfunctional slack-fill is corrected. Plaintiff JOCELYN might hesitate to purchase Defendant's products even if it ceases its unlawful packaging practices and begins packaging its products without slack-fill. If the products are no longer sold with non-functional slack-fill, then Plaintiff JOCELYN could not take advantage of those products because she has been misled into believing that the products have non-functional slack-fill. Courts have agreed with this assessment:

> [S]ome courts have focused on the particular nature of the injury at issue to find standing. They have found at least two injuries sufficient to establish standing where the plaintiff is aware of the misrepresentation: absent an injunction, the plaintiff-consumer will 1) no longer be able to confidently rely on the defendant's representations (see *Ries*, 287 F.R.D. at 533), and 2) refrain from purchasing products in the future even if they in fact conform to her expectations (*see Lilly v. Jamba Juice Company*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at *3-5 (N.D. Cal. March 18, 2015). When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is unclear whether or not is true.

*Duran v. Hampton Creek*, No. 3:15-cv-05497-LB, 2016 U.S. Dist. LEXIS 41650 (N.D. Cal. Mar. 28, 2016).

74.     The Court should follow the lead of California Federal Courts and recognize that a plaintiff may be injured after he learns of a manufacturer's deception, even though he is unlikely to fall victim to the exactly the same scheme again in exactly the same manner. To hold otherwise would immunize manufacturers and render injunctive relief impossible in consumer fraud class action lawsuits – if learning of a deception removed a Plaintiff's standing to seek an injunction, then wrongdoers could violate the law with impunity, defeating the purpose of consumer protection statutes.

75.     Plaintiff JOCELYN, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this

proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this

Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

76.     Plaintiff JOCELYN realleges and incorporates herein by reference the allegations

contained in all preceding paragraphs, and further alleges as follows:

77.     Plaintiff JOCELYN brings this claim individually and on behalf of the other

members of the Class for violations of NY GBL § 349.

78.     Any person who has been injured by reason of any violation of NY GBL § 349

may bring an action in her own name to enjoin such unlawful acts or practices, an action to

recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court

may, in its discretion, increase the award of damages to an amount not to exceed three times the

actual damages up to one thousand dollars, if the court finds the defendant willfully or

knowingly violated this section. The court may award reasonable attorney's fees to a prevailing

plaintiff.

79.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive

acts and practices by misbranding its Product so that it appears to contain more in the packaging

than is actually included.

80.     The practices employed by Defendant, whereby Defendant advertised, promoted,

marketed and sold its Product in packages containing non-functional slack-fill are unfair,

deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201

and the FDCA (21 U.S.C. § 343(d)) in that said Product is misbranded.

81. The foregoing deceptive acts and practices were directed at consumers.

82. Plaintiff JOCELYN and the other Class members suffered a loss as a result of

Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's

deceptive and unfair acts and practices, Plaintiff JOCELYN and the other Class members

suffered monetary losses from the purchase of Product, i.e., receiving less than the capacity of

the packaging due to non-functional slack-fill in the Product. In order for Plaintiff JOCELYN

and Class members to be made whole, they must receive a refund of the purchase price of the

Product equal to the percentage of non-functional slack-fill in it.

## COUNT III

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)
### (FALSE ADVERTISING)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

83. This claim is brought on behalf of Plaintiff JOCELYN and members of the Class

against Defendant.

84. Plaintiff JOCELYN realleges and incorporates by reference the allegations

contained in all preceding paragraphs, and further alleges as follows:

85. Defendant has been and/or is engaged in the "conduct of … business, trade or

commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

86. New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the

conduct of any business, trade or commerce." False advertising means "advertising, including

labeling, of a commodity … if such advertising is misleading in a material respect," taking into

account "the extent to which the advertising fails to reveal facts material in light of …
representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

87.     Pursuant to the FDCA as implemented through 21 C.F.R. § 100.100, package size
is an affirmative representation of quantity. Thus, the non-functional slack-fill in Defendant's
Product constituted false advertising as to the quantity of candy contained therein. Defendant
caused this false advertising to be made and disseminated throughout New York and the United
States. Defendant's false advertising was known, or through the exercise of reasonable care
should have been known, by Defendant to be deceptive and misleading to consumers.

88.     Defendant's affirmative misrepresentations were material and substantially
uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the
Product were, and continue to be, exposed to Defendant's material misrepresentations.

89.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its misrepresentations
and/or omissions regarding the Product, as set forth above, were material and likely to deceive a
reasonable consumer.

90.     Plaintiff  JOCELYN and members of the Class have suffered an injury, including
the loss of money or property, as a result of Defendant's false and misleading advertising. In
purchasing the Product, Plaintiff  JOCELYN and members of the Class relied on the
misrepresentations regarding the quantity of the Product that was actually candy rather than non-
functional slack-fill. Those representations were false and/or misleading because the Product
contains substantial hidden non-functional slack-fill. Had Plaintiff and the Class known this, they
would not have purchased the Product or been willing to pay as much for it.

91.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff  JOCELYN and members of
the Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory

damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

92.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

93.     Through its product packaging, Defendant intentionally made materially false and misleading representations regarding the quantity of candy that purchasers were actually receiving.

94.     Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations and did not know the truth about the Product at the time they purchased it.

95.     Defendant knew of its false and misleading representations. Defendant nevertheless continued to promote and encourage customers to purchase the Product in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

96.     Had Plaintiff and the Class known the actual amount of candy they were receiving, they would not have purchased the Product.

97.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

98.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund consisting of the percentage of the purchase price equal to the percentage of non-functional slack-fill in the Product.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiff and all members of the Class in an amount up to the purchase price of the Products;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: November [ ], 2017

Respectfully submitted,

<u>/s/ C.K. Lee</u>
By:  C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*